Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/19/2019 08:07 AM CDT

State of Nebraska, appellant, v.
Shannon D. Bigelow, appellee.
___ N.W.2d ___

Filed July 19, 2019.    No. S-18-006.

1. **Jury Instructions: Appeal and Error.** Whether jury instructions are correct is a question of law, which an appellate court resolves independently of the lower court's decision.
2. **Jury Instructions: Proof: Appeal and Error.** To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction.
3. **Insanity: Proof.** The insanity defense requires proof that (1) the defendant had a mental disease or defect at the time of the crime and (2) the defendant did not know or understand the nature and consequences of his or her actions or that he or she did not know the difference between right and wrong.
4. **Jury Instructions.** Jury instructions are not prejudicial if, when taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and the evidence.

Petition for further review from the Court of Appeals, Riedmann, Bishop, and Welch, Judges, on appeal thereto from the District Court for Lancaster County, Kevin R. McManaman, Judge. Judgment of Court of Appeals affirmed.

Mark E. Rappl for appellant.

Douglas J. Peterson, Attorney General, Melissa R. Vincent, and Derek T. Bral, Senior Certified Law Student, for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Miller-Lerman, J.

## NATURE OF CASE

After ingesting methamphetamine, Shannon D. Bigelow was in a hospital emergency room, where hospital personnel administered medications which, instead of relaxing him caused him to become agitated, whereupon he assaulted an officer. We granted Bigelow's petition for further review of the decision of the Nebraska Court of Appeals which affirmed his conviction in the district court for Lancaster County for third degree assault on an officer. On further review, Bigelow raises issues regarding jury instructions refused and given on the defenses of insanity and intoxication.

We agree with the Court of Appeals that the district court did not err when it refused Bigelow's proposed insanity defense instruction and instead gave an instruction regarding both voluntary and involuntary intoxication. We affirm.

## STATEMENT OF FACTS

The charge against Bigelow arose from an incident which occurred in July 2016 when he was admitted to a hospital after he ingested methamphetamine and exhibited bizarre behavior. Bigelow became agitated and restless at the hospital, so nurses injected him with three medications—Haldol, Ativan, and Benadryl—which were intended to relax him. However, Bigelow became more agitated, left his room, and began pacing around the emergency room. After personnel called for security, an off-duty police officer working for hospital security arrived and told Bigelow that he needed to leave the emergency room. Bigelow punched the officer in the face, "took him to the ground," and punched the officer several more times while reaching for the officer's gun. He then fled the emergency room, pursued by the security officer.

A sheriff's deputy responding to an emergency dispatch saw Bigelow running out the doors of the emergency room

followed by the security officer. The deputy pointed his Taser at Bigelow and told him to stop and get on the ground. Bigelow immediately stopped running and complied with the deputy's command to get on the ground. Bigelow also immediately complied with subsequent orders to roll over and put his hands behind his back. The deputy testified at trial that Bigelow was "completely compliant," that he did not resist and was not aggressive but instead was "[t]he opposite," and that he was compliant with other police officers who arrived and helped complete the capture.

Bigelow was arrested, and the State charged him with third degree assault on an officer in violation of Neb. Rev. Stat. § 28-931 (Reissue 2016). The State later amended the information to allege that Bigelow was a habitual criminal.

Prior to trial, Bigelow filed a notice of intent to rely on an insanity defense. After a competency evaluation, the court determined that Bigelow was competent to stand trial.

In his defense at trial, Bigelow called Dr. Klaus Hartmann as a witness. Hartmann had conducted an evaluation in January 2017 to determine whether Bigelow was insane at the time of the incident in July 2016. Although Hartmann noted that at times prior to the incident, Bigelow had been diagnosed with various mental disorders, including schizophrenia, the general thrust of Hartmann's testimony was that he attributed Bigelow's behavior in the emergency room to the effects of the three drugs given to him at the hospital. Hartmann also testified that the methamphetamine Bigelow had ingested prior to being admitted to the hospital would have made him "more energized," but Hartmann disagreed with an evaluation by another doctor who concluded that the assault was "precipitated by the voluntary use of amphetamine." When asked to opine on whether Bigelow knew what he was doing when the assault took place, Hartmann opined that "he was sufficiently impaired by the effects of these medicines that he did not know what he was doing." When asked whether the effect of the three drugs could be described as "some sort of either

a mental disease or defect or disorder," Hartmann declined to use one of those terms and instead described the effect as "a temporary drug-induced impairment." Hartmann had also described the effect of the three drugs as being "almost like [Bigelow] had been drinking alcohol excessively and he was not in a position to control his actions and be in full possession of his faculties."

During his cross-examination by the State, Hartmann testified that it was "the three drugs [Bigelow] was given at the hospital" and "[n]ot the methamphetamine" that had "caused his problems" at the time of the assault. At the end of the cross-examination, the State specifically asked Hartmann, "And your opinion is not that he was suffering from the mental disease to the extent that he did not know the difference between right and wrong with respect to what he was doing, it was the impairment due to the three drugs, correct?" Hartman replied, "Yes."

After Bigelow rested his case, the State moved the court for an order that Bigelow would not be entitled to submit an insanity defense to the jury. The State noted Hartman's testimony that it was not mental disease that caused Bigelow's behavior and that instead, he was impaired due to the drugs he had been given. Bigelow argued in response that "the mental disorder was essentially an involuntary intoxication . . . caused by the three drugs." The court found that Bigelow's evidence did not present a prima facie case for the insanity defense and granted the State's motion. In connection with the ruling, the court commented that it thought Bigelow's evidence showed both voluntary and involuntary intoxication but not the mental disease, defect, or disorder necessary for an insanity defense. The court also stated its understanding that insanity required a permanent "diagnosed mental condition, not a temporary intoxication" caused by "externally applied chemical" agents.

At the jury instruction conference, Bigelow objected to the court's draft instruction regarding the elements of the crime

charged; he instead proposed an instruction that incorporated the insanity defense. The language of the proposed instruction regarding the insanity defense followed NJI2d Crim. 7.0 and set forth the elements of the defense as being that Bigelow "had a mental disease, defect or disorder" that "impaired his mental capacity" such that he either "did not understand the nature and consequences of what he was doing" or "did not know the difference between right and wrong with respect to what he was doing." The court overruled Bigelow's objection to its draft instruction, and it refused Bigelow's proposed insanity instruction on the basis that the evidence did not justify it.

The court gave an intoxication instruction, including both voluntary and involuntary intoxication, to which neither the State nor Bigelow objected. The intoxication instruction is set forth in full in our analysis below.

The jury found Bigelow guilty of third degree assault on an officer. The court entered judgment based on the verdict, and it later found Bigelow to be a habitual criminal. The court sentenced Bigelow to imprisonment for a mandatory minimum of 10 years and a maximum of 12 years.

Bigelow appealed his conviction to the Court of Appeals. He claimed that the district court erred when it (1) refused his proposed insanity defense instruction and (2) gave the intoxication instruction. Bigelow also set forth certain claims of ineffective assistance of counsel, each of which the Court of Appeals found to be either refuted by the record or not capable of review on direct appeal; Bigelow does not seek further review of the ineffective assistance claims, and they are not further discussed herein.

The Court of Appeals rejected Bigelow's assignments of error regarding the instructions and affirmed Bigelow's conviction. *State v. Bigelow*, No. A-18-006, 2019 WL 286641 (Neb. App. Jan. 22, 2019) (selected for posting to court website). Regarding the proposed insanity instruction, the Court of Appeals agreed with the district court's determination that

the evidence did not support an insanity defense. The Court of Appeals noted Hartmann's testimony that it was not a mental disease, defect, or disorder that caused Bigelow to act the way he did but instead that he was suffering impairment from the three drugs he had been given at the hospital.

Regarding the intoxication instruction, the Court of Appeals noted that Bigelow had not objected to the instruction and it therefore reviewed the instruction only for plain error. The Court of Appeals cited Neb. Rev. Stat. § 29-122 (Reissue 2016) and determined that the instruction given by the district court "was an accurate statement of the involuntary intoxication defense in Nebraska," because the instruction tracked the provisions of § 29-122. *State v. Bigelow*, 2019 WL 286641 at *4. The Court of Appeals further determined that the evidence supported the intoxication instruction, because there was evidence that Bigelow was injected with three drugs and Hartmann testified that those drugs had an intoxicating effect on Bigelow and impaired his judgment.

We granted Bigelow's petition for further review.

## ASSIGNMENT OF ERROR

Bigelow claims that the Court of Appeals erred when it concluded that the evidence did not support an insanity instruction.

## STANDARD OF REVIEW

[1] Whether jury instructions are correct is a question of law, which an appellate court resolves independently of the lower court's decision. *State v. Mann*, 302 Neb. 804, 925 N.W.2d 324 (2019).

## ANALYSIS

Bigelow claims on further review that the Court of Appeals erred when it determined that the evidence did not support an insanity instruction and concluded that the district court had correctly refused his proposed instruction. He generally contends that under Nebraska law, involuntary intoxication can

support an insanity defense. He specifically contends that the evidence he presented regarding the effect of the three drugs given to him at the hospital caused him to be involuntarily intoxicated which, in turn, resulted in legal insanity, thus supporting an insanity defense instruction.

[2] To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction. *State v. Mann, supra*. In the present case, the Court of Appeals determined that there was no reversible error because Bigelow's tendered insanity instruction was not warranted by the evidence; the Court of Appeals therefore did not need to determine whether the tendered instruction correctly stated the law.

As noted, Bigelow contends that evidence of his involuntary intoxication supported an insanity defense. He argues that although case law such as *State v. Hotz*, 281 Neb. 260, 795 N.W.2d 645 (2011), and statutes such as § 29-122 and Neb. Rev. Stat. § 29-2203(4) (Reissue 2016) establish that the insanity defense is not available in cases involving a temporary condition resulting from voluntary intoxication, we have not addressed whether the insanity defense is available when the defendant's mental state is altered by involuntary intoxication.

In order to address Bigelow's argument, we first review Nebraska law relating to the insanity defense, the intoxication defense, and the interplay of the two. We then consider whether, based on such law, an insanity instruction was warranted based on the evidence in this case. Thereafter, we consider whether an intoxication instruction was warranted instead of an insanity instruction and, if so, whether the intoxication instruction given by the district court in this case was appropriate.

*Insanity Defense and Intoxication Defense*
*Developed in Nebraska Common Law*
*and Are Controlled to Some*
*Extent by Statute.*

Bigelow's arguments raise issues regarding the insanity defense, the intoxication defense, and the interplay of the two. The two defenses have developed in Nebraska as separate defenses which operate distinctly, and each defense applies to a different circumstance. However, our case law has recognized a degree of intersection between the two concepts.

[3] In Nebraska, as a general matter, the insanity defense and the intoxication defense were each developed by case law. The two developed to address different issues, and they operate in distinct ways. Generally, under Nebraska's common-law definition, the insanity defense requires proof that (1) the defendant had a mental disease or defect at the time of the crime and (2) the defendant did not know or understand the nature and consequences of his or her actions or that he or she did not know the difference between right and wrong. See *State v. Williams*, 295 Neb. 575, 889 N.W.2d 99 (2017). As it developed under common law in Nebraska, the intoxication defense required that "the defendant must not have become intoxicated to commit the crime and, because of the intoxication, must have been rendered wholly deprived of reason. The excessive intoxication must support a conclusion that the defendant lacked the specific intent to commit the charged crime." *State v. Dubray*, 289 Neb. 208, 239, 854 N.W.2d 584, 611-12 (2014).

The two defenses operate in different ways. Although a successful insanity defense operates as a complete defense to the offense, the intoxication defense does not and instead is treated as a factor the jury may consider when determining whether the defendant had the requisite mental state. We stated in *State v. Hotz*, 281 Neb. 260, 270, 795 N.W.2d 645, 653 (2011), "[i]n Nebraska, the intoxication defense has been available to a defendant under common law almost as long as the insanity

defense." However, we described the intoxication defense as not being a "justification or excuse for a crime," but as a factor that could be "considered to negate specific intent." *Id*. As we noted in *State v. Hood*, 301 Neb. 207, 217, 917 N.W.2d 880, 889 (2018), with regard to an intoxication defense:

> In *State v. Vosler*, [216 Neb. 461, 345 N.W.2d 806 (1984),] we noted that "although there is but one type of insanity which will support a finding of not guilty or not responsible by reason of insanity, there are a variety of mental conditions which bear upon the ability to form a specific intent."

We stated in *State v. Dubray*, 289 Neb. at 239, 854 N.W.2d at 611-12, that "[u]nder Nebraska common law, intoxication is not a justification or excuse for a crime, but it may be considered to negate specific intent."

In past cases, most notably in *State v. Hotz, supra*, we have recognized some interplay between intoxication and insanity. Bigelow notes case law such as *Hotz* and the Legislature's amendment of § 29-2203, which amendment became effective after we filed our decision in *Hotz*, to include subsection (4) which provides, "For purposes of this section, insanity does not include any temporary condition that was proximately caused by the voluntary ingestion, inhalation, injection, or absorption of intoxicating liquor, any drug or other mentally debilitating substance, or any combination thereof." See 2011 Neb. Laws, L.B. 100, § 2. Bigelow relies on such case law and the specific references in § 29-2203(4) to a "temporary" condition caused by "voluntary" intoxication to argue that Nebraska law recognizes an insanity defense based on either a temporary condition caused by involuntary intoxication or a permanent condition caused by long-term alcohol or drug use. However, as discussed further below, we need not examine this precedent or determine the effect of § 29-2203(4) on such precedent in the present case. The evidence presented by Bigelow does not establish that his condition at the time of the incident was "insanity" as defined in our case law, regardless of whether the

condition was temporary or permanent or whether the condition was caused by voluntary or involuntary intoxication.

Having reviewed the current state of Nebraska law on the insanity defense and the intoxication defense, we apply the law to the specifics of the present case.

*District Court and Court of Appeals Correctly*
*Concluded That Evidence in This Case*
*Did Not Support Insanity Defense*
*Instruction Proposed by Bigelow.*

Applying the law just discussed, we note that in order to support an insanity defense, regardless of the cause of the insanity, a mental disease or defect must be shown. The evidence presented by Bigelow did not show that Bigelow suffered from such disorders.

Contrary to Bigelow's arguments, Hartmann's testimony did not support a finding of insanity caused by involuntary intoxication. Hartmann testified that Bigelow's behavior in the emergency room was caused by the "effect" of the three drugs given to him at the hospital. However, Hartmann did not characterize such "effect" as "insanity," because he did not testify that the intoxication caused a mental disease or defect. Hartmann did not accept that description when defense counsel posed a question using the language of "mental disease, defect or disorder," and he instead referred to the "effects" of the drugs. On cross-examination, when the State posited that it was not mental disease that caused Bigelow's behavior but instead "impairment due to the three drugs," Hartman agreed. Neither "effects" of drugs nor "impairment" caused by drugs establishes the mental disease or defect required in the law to support an insanity defense. Without evidence linking intoxication to a mental disease or defect or disorder, there is no evidence to support an insanity defense. Although Hartmann's testimony attributing Bigelow's behavior to the effects of the three drugs or impairment caused by the three drugs was sufficient to support an involuntary intoxication defense, it did not support an

insanity defense. We therefore agree with the Court of Appeals that the district court did not err when it refused Bigelow's proposed insanity instruction, because it was not supported by the evidence.

*Evidence Supported Intoxication Instruction.*

As the district court noted, there was evidence in this case of both voluntary intoxication, caused by Bigelow's use of methamphetamine, and involuntary intoxication, caused by the three drugs given to him at the hospital. The court therefore gave an intoxication instruction that addressed both voluntary and involuntary intoxication. We agree with the district court and Court of Appeals that an intoxication instruction was warranted by the evidence.

Regarding the district court's determination that there was evidence of involuntary intoxication in this case, we do not appear to have addressed whether use of prescribed medication or drugs given by medical personnel can be considered involuntary intoxication. We note that other jurisdictions have determined that one type of "involuntary intoxication is when the substance was taken pursuant to medical advice." 2 Wayne R. LaFave, Substantive Criminal Law § 9.5(g) at 69-70, n.65 (3d ed. 2018) (citing cases). But see *People v. McMillen*, 2011 IL App (1st) 100366, 961 N.E.2d 400, 356 Ill. Dec. 304 (2011) (stating that defendant's intoxication due to unexpected interaction between prescription medicine and voluntarily ingested cocaine did not render defendant involuntarily intoxicated). We believe that under § 29-122, use of medically advised drugs could be involuntary intoxication if the defendant did not know the intoxicating effect of the drug or did not voluntarily take the drug.

From the evidence in this case, the jury could have found Bigelow's behavior in the emergency room was caused by his voluntary ingestion of methamphetamine before he was brought to the hospital or by an interaction of the drugs given at the hospital with the methamphetamine he had voluntarily

ingested. In contrast, based on Hartmann's testimony, the jury could have found that his behavior was caused solely by the effect of the three drugs given to him at the hospital, in which case, Bigelow was involuntarily intoxicated. Finally, based on evidence such as the deputy sheriff's testimony that shortly after assaulting the security officer, Bigelow was "completely compliant" with the deputy sheriff's show of force, the jury could have determined that neither the methamphetamine nor the three drugs given at the hospital had affected Bigelow to the point that he did not have the mental ability to consciously form the requisite intent when he assaulted the security officer minutes earlier.

Because each of these findings was cognizable under Nebraska law and because each finding could be supported by the evidence, it was proper for the court to instruct the jury on these options. It is appropriate for a court to instruct on alternate theories if each is supported by the evidence. By its verdict of guilty, the jury determined that either Bigelow's behavior was caused by his voluntary use of methamphetamine or, if his behavior was caused by involuntary intoxication, his mental state was not affected by any of the substances to the point that he could not form the requisite intent.

In sum, we conclude that based on the evidence in this case, the district court did not err when it refused Bigelow's proposed insanity instruction and did not err when it instead gave an instruction on intoxication.

*Intoxication Instruction Given by District Court Correctly Stated Law, Was Not Misleading, and Adequately Covered Intoxication Issues Supported by Evidence in This Case.*

Because it does not appear that since the enactment of § 29-122 in 2011 we have considered an appeal in a case in which there was evidence that supported giving an involuntary intoxication instruction, we take this opportunity to review the intoxication instruction given in this case to consider how

issues of intoxication should be presented to a jury in light of § 29-122.

In cases we have decided since the enactment of § 29-122 in which the defendant had sought an intoxication instruction, we have determined that the case involved only evidence of voluntary intoxication and that therefore, the court below correctly refused to instruct on an intoxication defense. See, *State v. Mueller*, 301 Neb. 778, 920 N.W.2d 424 (2018); *State v. Abejide*, 293 Neb. 687, 879 N.W.2d 684 (2016). In addition, we have not had the opportunity to consider the propriety of a court's instruction in light of § 29-122 when there is evidence of involuntary intoxication and, as in this case, evidence of both voluntary and involuntary intoxication.

The district court in this case gave the following instruction regarding intoxication:

There has been evidence that [Bigelow] was intoxicated at the time that the crime with which he is charged was committed.

Voluntary intoxication is not a defense to the crime charged. You may not consider his voluntary intoxication in determining whether he had the required intent to commit the crime charged.

Evidence that . . . Bigelow was involuntarily intoxicated may be taken into consideration if he proves by clear and convincing evidence that he did not:

(1) know that it was an intoxicating substance when he or she ingested, inhaled, injected, or absorbed the substance causing the intoxication; or

(2) ingest, inhale, inject, or absorb the intoxicating substance voluntarily.

Such involuntary intoxication is a defense only when a person's mental abilities were so far overcome by the involuntary intoxication that he could not have had the required intent.

In this case . . . Bigelow has the burden of proving involuntary intoxication by clear and convincing evidence.

Clear and convincing evidence means evidence that produces a firm belief or conviction about the fact to be proved. Clear and convincing evidence means more than the greater weight of the evidence and less than proof beyond a reasonable doubt.

[4] We have stated that jury instructions are not prejudicial if, when taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and the evidence. *State v. Mann*, 302 Neb. 804, 925 N.W.2d 324 (2019). Under these standards, we conclude the intoxication instruction given by the court in this case correctly stated the law as set forth in § 29-122, by stating that voluntary intoxication is not a defense; that intoxication could be considered in connection with the required mental state if such intoxication is shown to be involuntary, consistent with § 29-122; and that Bigelow had the burden to show by clear and convincing evidence that he was involuntarily intoxicated. We further determine that the instruction was not misleading and that it adequately covered the issues relating to intoxication that were supported by the pleadings and evidence in this case.

## CONCLUSION

We conclude that the Court of Appeals was correct when it concluded that the district court did not err when it refused Bigelow's proposed insanity defense instruction. We further conclude that the evidence in this case did support an instruction regarding both voluntary and involuntary intoxication and that the intoxication instruction given by the district court in this case correctly stated the law, was not misleading, and adequately covered the issues relating to intoxication that were supported by the pleadings and evidence. We therefore affirm the decision of the Court of Appeals which affirmed Bigelow's conviction for third degree assault on an officer.

Affirmed.