Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/05/2019 09:06 AM CST

State of Nebraska, appellee, v.
Daejerron L. Valentine,
appellant.

___ N.W.2d ___

Filed October 29, 2019.    No. A-18-902.

1. **Constitutional Law: Search and Seizure: Motions to Suppress: Appeal and Error.** In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error. But whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination.

2. **Investigative Stops: Motor Vehicles: Police Officers and Sheriffs: Probable Cause.** An officer's stop of a vehicle is objectively reasonable when the officer has probable cause to believe that a traffic violation has occurred.

3. **Search and Seizure: Warrantless Searches: Motor Vehicles.** Searches and seizures must not be unreasonable, and searches without a valid warrant are per se unreasonable, subject only to a few specifically established and well-delineated exceptions, including the automobile exception.

4. **Search and Seizure: Warrantless Searches: Probable Cause: Motor Vehicles.** The automobile exception to the warrant requirement applies when a vehicle is readily mobile and there is probable cause to believe that contraband or evidence of a crime will be found in the vehicle.

5. **Search and Seizure: Warrantless Searches: Probable Cause: Motor Vehicles: Police Officers and Sheriffs: Controlled Substances.** Officers with sufficient training and experience who detect the odor of marijuana emanating from a vehicle have probable cause on that basis alone to search the vehicle under the automobile exception to the warrant requirement.

6. **Statutes: Appeal and Error.** Statutory interpretation presents a question of law, which an appellate court reviews independently of the lower court's determination.

7. **Statutes: Legislature: Intent.** The fundamental objective of statutory interpretation is to ascertain and carry out the Legislature's intent.

8. **Statutes.** Statutory language is to be given its plain and ordinary meaning.

9. **Statutes: Legislature: Intent.** Only if a statute is ambiguous or if the words of a particular clause, taken literally, would plainly contradict other clauses of the same statute, lead to some manifest absurdity, to some consequences which a court sees plainly could not have been intended, or to a result manifestly against the general term, scope, and purpose of the law, may the court apply the rules of construction to ascertain the meaning and intent of the lawgiver.

10. **Statutes.** A statute is ambiguous if it is susceptible of more than one reasonable interpretation, meaning that a court could reasonably interpret the statute either way.

11. **Statutes: Legislature: Intent.** An appellate court can examine an act's legislative history if a statute is ambiguous or requires interpretation.

12. **Jury Instructions: Appeal and Error.** Whether jury instructions are correct is a question of law, which an appellate court resolves independently of the lower court's decision.

13. **Jury Instructions: Proof: Appeal and Error.** In an appeal based on a claim of an erroneous jury instruction, the appellant has the burden to show that the questioned instruction was prejudicial or otherwise adversely affected a substantial right of the appellant.

14. **Jury Instructions: Appeal and Error.** In an appeal based on a claim of an erroneous jury instruction, all the jury instructions must be read together, and if, taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and the evidence, there is no prejudicial error necessitating reversal.

15. **Jury Instructions: Proof: Appeal and Error.** To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction.

16. **Jury Instructions.** Whenever an applicable instruction may be taken from the Nebraska Jury Instructions, that instruction is the one which should usually be given to the jury in a criminal case.

Appeal from the District Court for Douglas County: Duane C. Dougherty, Judge. Affirmed.

Thomas C. Riley, Douglas County Public Defender, and Jessica C. West for appellant.

Douglas J. Peterson, Attorney General, and Nathan A. Liss for appellee.

Riedmann, Bishop, and Arterburn, Judges.

Arterburn, Judge.

## I. INTRODUCTION

Following a jury trial, Daejerron L. Valentine was convicted of possession of a deadly weapon by a prohibited person and possession of marijuana. Valentine appeals from his convictions. On appeal, he challenges the district court's failure to suppress evidence seized during a traffic stop of his vehicle and the district court's interpretation of Neb. Rev. Stat. § 28-1206 (Supp. 2017), which delineates the elements of the offense of possession of a deadly weapon by a prohibited person. Valentine also argues that the district court erred in giving certain jury instructions and refusing his proposed jury instructions. Following our review of the record, we affirm Valentine's convictions.

## II. BACKGROUND

On July 25, 2018, the State filed an amended information charging Valentine with one count of possession with intent to distribute marijuana, in violation of Neb. Rev. Stat. § 28-416 (Cum. Supp. 2018), and one count of possession of a deadly weapon (firearm) by a prohibited person, second offense, in violation of § 28-1206. The charges against Valentine stem from a traffic stop of his vehicle which occurred on October 12, 2017.

On the evening of October 12, 2017, Patrick Dempsey, an Omaha Police Department detective assigned to the "gang

suppression unit," was on patrol in the northeast part of Omaha, Nebraska, in a marked police cruiser with his partner. At approximately 10:30 p.m., Dempsey observed the passenger side of a white vehicle driving in front of him near the intersection of 23d and Sprague Streets. Dempsey believed that the tint on the windows of the vehicle was too dark and, thus, constituted a traffic violation. During Dempsey's trial testimony, he explained that the tint on the rear side windows of a vehicle is permitted to be darker than the tint on the front side windows of a vehicle. As such, he testified that if the tint on the front side windows matches the tint on the back side windows, the tint on the front side windows is probably darker than is permitted. Dempsey observed that the tint on the windows of the vehicle was all the same color and appeared to Dempsey to be darker than is permitted. In addition, Dempsey could not observe anyone in the vehicle because of the dark color of the tint. Dempsey explained that if a vehicle has the correct tint in the front, a person should be able to observe the occupants inside the vehicle through the front side windows.

Because of Dempsey's belief that the tint on the windows of the vehicle was darker than what is permitted, he initiated a traffic stop. At the point that Dempsey was approaching the vehicle on the driver's side, he was able to observe that there was only one occupant. That occupant was later identified as Valentine. Valentine rolled down the window on the driver's side of the vehicle and spoke with Dempsey. While Dempsey was speaking with Valentine, he detected the strong odor of burnt marijuana coming from the vehicle. As a result of Dempsey's observation, he asked Valentine to step out of the vehicle. Dempsey also asked Valentine if he had been smoking marijuana in the vehicle. Valentine denied smoking marijuana himself, but did admit that he had a friend who had smoked marijuana in the vehicle.

Dempsey conducted a search of Valentine's person, but did not locate any marijuana. Dempsey then conducted a search

of the vehicle. In the center console between the front seats, Dempsey located two baggies of a substance which subsequent testing revealed was marijuana. One baggie contained 18.8 grams of marijuana and one baggie contained 9.196 grams of marijuana. As such, the total weight of marijuana found in the baggies was 27.996 grams, or just under 1 ounce. Also in the center console, Dempsey located "a working digital scale" and two empty baggies similar to those which contained the marijuana.

When Dempsey searched the front passenger door of the vehicle, he located a gun hidden beneath the control panel for the door's window and locking mechanism. When he searched the trunk of the vehicle, Dempsey located $240 in cash hidden in a tennis shoe and an opened box of baggies which were similar to those which contained the marijuana. After conducting the search of the vehicle, Dempsey tested the window tint and discovered that the front side windows were darker than is permitted by law. Ultimately, Valentine was placed under arrest and transported to police headquarters.

In July 2018, trial was held. During the trial, Dempsey testified regarding the traffic stop and subsequent search of Valentine's vehicle which had occurred on October 12, 2017. In conjunction with Dempsey's testimony, the State offered into evidence the video obtained from Dempsey's "body-worn camera" which depicted the traffic stop and the subsequent search. The video depicts Dempsey's initial observations of Valentine's vehicle prior to the traffic stop, his interactions with Valentine, and his detailed search of Valentine's vehicle. In particular, the video portrays Dempsey's discovery of the gun which was hidden in the front passenger door. After Dempsey opens the passenger door, he searches a compartment at the base of the door, but finds nothing of evidentiary value. He then pulls, without much force, on the control panel for the door's window and locking mechanism, and the control panel easily comes off of the door to reveal a "void" in the vehicle's door. Dempsey testified that "[t]here was nothing attaching

[the control panel] other than the cord." Inside the void, a gun is readily visible.

During Dempsey's trial testimony, he opines that given everything that he found in Valentine's vehicle, including the marijuana, the gun, the digital scale, the cash, and the baggies, that Valentine intended to distribute the marijuana. Dempsey noted that he did not find any items in the vehicle which would indicate that Valentine, himself, had smoked or was planning on smoking the marijuana.

The State presented evidence at trial to prove that the gun found in Valentine's vehicle was loaded and in working order. DNA testing conducted on the gun revealed that Valentine could not be excluded as the major contributor to the DNA found on the gun. The probability of an individual not related to Valentine matching the DNA profile from the gun is approximately 1 in 26.8 septillion. The parties stipulated that Valentine has previously been convicted of a felony.

At the close of the evidence, the jury found Valentine guilty of possession of marijuana, less than 1 ounce, a lesser-included offense of possession of marijuana with the intent to distribute, as the State charged in its amended information. The jury also found Valentine guilty of possession of a deadly weapon by a prohibited person. The district court subsequently sentenced Valentine to a $300 fine on his conviction for possession of marijuana. The court found that Valentine's conviction for possession of a deadly weapon by a prohibited person was a second offense and sentenced him to 20 to 20 years' imprisonment plus 1 day on that conviction.

Valentine appeals from his convictions.

### III. ASSIGNMENTS OF ERROR

On appeal, Valentine assigns that the district court erred in (1) overruling his motion to suppress evidence seized as a result of the traffic stop because there was not probable cause to stop his vehicle and because the search of his entire vehicle was not reasonable or supported by probable cause;

(2) incorrectly interpreting § 28-1206, as it read at the time of his arrest; and (3) giving improper jury instructions.

## IV. ANALYSIS

### 1. Motion to Suppress Evidence

#### (a) Additional Background

Prior to trial, Valentine filed a motion to suppress the evidence obtained as a result of the search of his vehicle. After a hearing, where Dempsey testified in detail regarding the traffic stop and the subsequent search of Valentine's vehicle, the district court denied the motion to suppress, finding that "all of the officers' actions that evening were appropriate and in accordance with Nebraska law." Subsequently, Valentine's original counsel withdrew from the case and another attorney was appointed to represent him. Valentine's second attorney filed a motion asking the court to reconsider its ruling on the motion to suppress and to "reopen the evidentiary hearing to allow defense counsel to re-cross examine State's witnesses and to present . . . newly discovered evidence." The district court granted Valentine's request, and a new evidentiary hearing on the motion to suppress was held.

At the second evidentiary hearing, Dempsey again testified regarding the traffic stop and the subsequent search of Valentine's vehicle. In addition to the details provided in the background section above, Dempsey provided more specific details at this hearing regarding the search of Valentine's vehicle. Dempsey explained that he commonly checks the control panel on a vehicle's doors during his searches because, in his experience, it is common for people to hide drugs or guns in that location. He testified that once that control panel is removed, there is a "little hidden compartment" inside the door. Dempsey also indicated that during the course of the stop of Valentine's vehicle, he received information from other officers that they had been looking for Valentine because they believed him to be selling marijuana and to be armed with a

gun. Dempsey indicated that he did not have this information prior to initiating the traffic stop of Valentine.

At the close of the hearing, Valentine's counsel argued first that all of the evidence seized during the search of Valentine's vehicle should be suppressed because "it's questionable whether or not [police] really were pulling him over for a window tint violation." Counsel suggested that Dempsey would have been unable to observe a window tint violation "at 11:00 at night with very little lighting." Counsel also argued that the evidence seized from the vehicle after the marijuana was found in the center console should be suppressed because the search went "beyond the scope of the . . . traffic stop."

The district court again overruled Valentine's motion to suppress the evidence seized during the search of his vehicle. The court reiterated its previous finding that "all of the officers' actions [on the] evening [of the traffic stop] were appropriate and in accordance with Nebraska law." Valentine challenges the district court's decision to overrule his motion to suppress evidence.

### (b) Standard of Review

[1] In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error. But whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination. *State v. Nunez*, 299 Neb. 340, 907 N.W.2d 913 (2018).

### (c) Traffic Stop Was Unlawful

Valentine asserts that the district court erred in overruling his motion to suppress all of the evidence seized during the traffic stop because there was not probable cause to stop his vehicle. We disagree with his contention.

[2] An officer's stop of a vehicle is objectively reasonable when the officer has probable cause to believe that a traffic violation has occurred. *State v. Draganescu*, 276 Neb. 448, 755 N.W.2d 57 (2008). Traffic violations, no matter how minor, create probable cause to stop the driver of a vehicle. *Id*. Neb. Rev. Stat. § 60-6,257 (Reissue 2010) provides, in relevant part:

> (1) It shall be unlawful for a person to drive a motor vehicle required to be registered in this state upon a highway:
>
> (a) If the windows in such motor vehicle are tinted so that the driver's clear view through the windshield or side or rear windows is reduced or the ability to see into the motor vehicle is substantially impaired;
>
> (b) If the windshield has any sunscreening material that is not clear and transparent below the AS-1 line or if it has a sunscreening material that is red, yellow, or amber in color above the AS-1 line;
>
> (c) If the front side windows have any sunscreening or other transparent material that has a luminous reflectance of more than thirty-five percent or has light transmission of less than thirty-five percent; [or]
>
> (d) If the rear window or side windows behind the front seat have sunscreening or other transparent material that has a luminous reflectance of more than thirty-five percent or has light transmission of less than twenty percent except for the rear window or side windows behind the front seat on a multipurpose vehicle, van, or bus[.]

Dempsey initiated a traffic stop of Valentine's vehicle due to his suspicion that the tint on the side windows of the vehicle was too dark pursuant to § 60-6,257. On appeal, Valentine challenges the stop of his vehicle, arguing that Dempsey did not use an "objective basis" in determining that the side windows were too darkly tinted. Brief for appellant at 15.

Contrary to Valentine's argument on appeal, Dempsey testified that he relied on two objective bases in forming his

suspicion that Valentine's tint was too dark. First, Dempsey explained that the tint color on the front side windows appeared to be the same as that on the rear side windows. Pursuant to § 60-6,257(1)(c) and (d), the tint on the front side windows is required to be lighter than the tint on the rear side windows. When Dempsey observed that the windows on Valentine's vehicle had all the same color of tint, he suspected the tint on the front side windows was too dark.

Additionally, Dempsey testified that the tint on the vehicle's windows was so dark that he could not readily observe anyone in the vehicle. Dempsey explained that if a vehicle has tint in compliance with § 60-6,257(1), police should be able to "almost see somebody in the vehicle." Here, Dempsey testified that he was unable to observe an occupant in the vehicle until he had gotten out of his police cruiser and was approaching Valentine's vehicle. Section 60-6,257(1)(a) provides that it is unlawful to have tint on a vehicle's windows which "substantially impair[s]" the ability to see into the vehicle.

Valentine takes issue with Dempsey's testimony that the tint on the vehicle's windows impaired his ability to see inside the vehicle. Valentine points to a small part of Dempsey's testimony from the initial suppression hearing. After Dempsey specifically testified that he could not see anyone in the vehicle due to the dark color of tint, he indicated that he initiated a traffic stop of Valentine's vehicle and made contact with Valentine who was the lone occupant. The prosecutor then asked Dempsey, "Now, at that time, because of the tinted windows, were you able to see if there was more than one person in the car?" Dempsey responded affirmatively. Although Valentine directs us to this testimony in an attempt to prove that Dempsey could, in fact, see into the vehicle through the tint before the traffic stop was made, we read this testimony differently. In the context of the question and Dempsey's response in his previous answer, his testimony indicates that he could see that there was one occupant in Valentine's vehicle only after he had initiated the traffic stop. This testimony is

consistent with Dempsey's initial testimony, as well as his later explanation that he could see an occupant of the vehicle only after he got out of his police cruiser and began approaching Valentine's vehicle. Ultimately, we conclude Dempsey clearly testified that when he stopped Valentine's vehicle, he did so, in part, because the tint on the vehicle's windows was so dark he could not see anyone inside.

Based upon our reading of the record, we find that the district court did not err in overruling Valentine's motion to suppress evidence on the basis that there was no probable cause to initiate a traffic stop of his vehicle. The State presented sufficient evidence to establish that Dempsey reasonably believed that Valentine had committed a traffic violation by operating a motor vehicle which had windows that were tinted darker than is permitted by § 60-6,257. In reaching our conclusion, we note that Dempsey's subsequent testing of Valentine's windows revealed that the front side windows were, in fact, not in compliance with the requirements of § 60-6,257(1)(a).

### (d) Search of Passenger Door

Valentine also asserts that the district court erred in failing to suppress the evidence found in the vehicle subsequent to the location of the marijuana in the center console. In his brief, Valentine explains that because the probable cause to search the vehicle arose from Dempsey's smelling the odor of burnt marijuana, once the marijuana "was successfully located," Dempsey "did not have probable cause to believe that contraband was hidden in any other part of the automobile and, thus, a search of the entire vehicle was without probable cause and was unreasonable under the [F]ourth [A]mendment." Brief for appellant at 19. Again, we disagree with Valentine's contention.

[3] Both the Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution guarantee against unreasonable searches and seizures. *State v. Seckinger*, 301 Neb. 963, 920 N.W.2d 842 (2018). The ultimate touchstone

is one of reasonableness. *Id*. Searches and seizures must not be unreasonable, and searches without a valid warrant are per se unreasonable, subject only to a few specifically established and well-delineated exceptions, including the automobile exception. See *id*.

[4] The automobile exception to the warrant requirement applies when a vehicle is readily mobile and there is probable cause to believe that contraband or evidence of a crime will be found in the vehicle. *Id*. A vehicle is readily mobile whenever it is not located on private property and is capable or apparently capable of being driven on the roads or highways. *Id*.

[5] The Nebraska Supreme Court has consistently held that officers with sufficient training and experience who detect the odor of marijuana emanating from a vehicle have probable cause on that basis alone to search the vehicle under the automobile exception to the warrant requirement. *Id*. See, e.g., *State v. Watts*, 209 Neb. 371, 307 N.W.2d 816 (1981); *State v. Ruzicka*, 202 Neb. 257, 274 N.W.2d 873 (1979); *State v. Daly*, 202 Neb. 217, 274 N.W.2d 557 (1979); *State v. Benson*, 198 Neb. 14, 251 N.W.2d 659 (1977). Accord *State v. Reha*, 12 Neb. App. 767, 686 N.W.2d 80 (2004). Additionally, in *State v. Watts, supra*, the Supreme Court rejected an argument that once law enforcement discovered marijuana in the vehicle, the search must end unless there were additional facts to suggest contraband may be found elsewhere in the vehicle. The court stated:

> [I]t [is] just as logical to conclude that the finding of the small amount of marijuana in the passenger compartment, after being told by the defendant that none existed, simply served to substantiate the officer's suspicions and furnish additional probable cause to make a complete search of the automobile. Having found a quantity of illicit drugs in one part of the automobile does not sensibly suggest the probability that no more such substance is present.

*Id*. at 374, 307 N.W.2d at 819.

Given that Dempsey detected the odor of marijuana emanating from Valentine's vehicle, he had probable cause to search the entire vehicle, even after he had located the baggies of marijuana in the vehicle's center console. Dempsey's discovery of marijuana in the vehicle "served to substantiate [his] suspicions and furnish additional probable cause to make a complete search of the automobile." See *id*. The district court did not err in overruling Valentine's motion to suppress the evidence found in Dempsey's thorough search of the vehicle.

## 2. Interpretation of § 28-1206

### (a) Additional Background

After Valentine's first attorney withdrew from the case, Valentine's second attorney requested that Valentine be permitted to withdraw his plea of not guilty. The court granted this request. Counsel then filed a motion to quash, arguing that the language used within the information did not comply with the language of § 28-1206, which delineated the elements of possession of a firearm by a prohibited person, as that statute existed on October 12, 2017.

In the information, the State alleged:

> On or about 12 October 2017, in Douglas County, Nebraska, [Valentine] did then and there unlawfully possess a deadly weapon to wit: a firearm and has previously been convicted of a felony, is a fugitive from justice, or is the subject of a current and validly issued domestic violence protection order and is knowingly violating such order, or has been convicted within the past seven years of a misdemeanor crime of domestic violence . . . .

Valentine asserts that this language is not consistent with the language of § 28-1206 as it existed on October 12, 2017. At that time, § 28-1206 read as follows:

> (1) A person commits the offense of possession of a deadly weapon by a prohibited person if he or she:
>
> (a) Possesses a firearm, a knife, or brass or iron knuckles and he or she:

(i) Has previously been convicted of a felony;

(ii) Is a fugitive from justice;

(iii) Is the subject of a current and validly issued domestic violence protection order, harassment protection order, or sexual assault protection order and is knowingly violating such order[.]

Essentially, Valentine argued that because the word "or" did not appear anywhere between subsections (1)(a)(i), (1)(a)(ii), or (1)(a)(iii) of § 28-1206, that in order for an individual to be defined as a "prohibited person," he or she must be at the same time a previously convicted felon, a fugitive from justice, and subject to a current or validly issued domestic violence or harassment protection order.

To the contrary, the State argued that § 28-1206, as it appeared in October 2017, was ambiguous because there was neither an "and" nor an "or" between subsections (1)(a)(i), (1)(a)(ii), or (1)(a)(iii). The State urged the district court to consider the legislative history surrounding this statutory section, which the State offered into evidence over Valentine's relevance objections, in determining how to interpret § 28-1206.

The legislative history reveals that in April 2017, § 28-1206 was amended in order to provide an exemption to the Nebraska Criminal Code regarding possession of deadly weapons by exempting archery equipment and knives intended for recreational purposes. In addition, it added those individuals who are subject to harassment protection orders to the list of those prohibited from weapon possession under the criminal code. However, in amending the statutory language for these specific purposes, the Legislature inadvertently left out an "or" between subsections (1)(a)(i), (1)(a)(ii), and (1)(a)(iii). This omission was rectified in January 2018. The current version of § 28-1206 is identical to the one that existed in October 2017, except there is an "or" between subsections (1)(a)(ii) and (1)(a)(iii), such that in order for an individual to be defined as a "prohibited person," he or she must be

either a previously convicted felon, a fugitive from justice, or subject to a current and validly issued domestic violence or harassment protection order. See § 28-1206 (Cum. Supp. 2018).

The district court overruled Valentine's motion to quash, finding that the information correctly defined the elements of possession of a deadly weapon by a prohibited person. In a written order, the court found that § 28-1206, as it appeared in October 2017, was ambiguous because "it could be argued that it is likely that the Legislature intended the word 'or' to be present within the statute as much as it is likely that the Legislature intended the word 'and' to be present within the statute." And, that because the statutory language was ambiguous, the court could review the legislative history in order to resolve the ambiguity. The district court stated:

> This Court is in agreement with the State that to interpret the statute as suggested and argued by [Valentine] would lead to a manifest absurdity, to consequences which this Court sees plainly could not have been intended and further to result manifestly against the general term, scope, and purpose of Neb. Rev. Stat. §28-1206. The Court interprets the statute as if the disjunctive "or" existed between subsections a(ii) and a(iii). Thus, requiring a "prohibited person" to be only one of the elements, not all of them.

Valentine subsequently renewed his argument with respect to the elements necessary to prove him guilty of possession of a deadly weapon by a prohibited person when he made a motion to dismiss at the close of the State's case. Valentine's counsel argued:

> The statute specifically requires the State to prove beyond a reasonable doubt that . . . Valentine was not only a convicted felon, but also, in order to be a prohibited person, he needed to have an active protection order which he was violating as well as have an active — be a fugitive from justice.

The State, obviously, has presented no evidence that there was an active warrant against . . . Valentine at the time of the stop. They produced no evidence that there was an active protection order against him or that he was in violation of that. So they have failed to meet their burden under the law as it was written and applies to . . . Valentine in this case for these charges on October 12, 2017.

The district court denied Valentine's motion to dismiss, citing its previous rationale in denying his motion to quash.

On appeal, Valentine argues that the district court erred in interpreting § 28-1206, as it existed in October 2017, to define a "prohibited person" as someone who is a convicted felon, who is a fugitive from justice, or who is subject to a current domestic violence or harassment protection order, rather than as someone who fits into all three categories simultaneously. Valentine asserts that the district court's erroneous interpretation of § 28-1206 denied him due process and caused him to be convicted of the crime of possession of a deadly weapon by a prohibited person when there was insufficient evidence presented to prove his guilt. Upon our review, we do not agree with Valentine's assertions. Rather, we agree with the district court's interpretation of § 28-1206, as it existed in October 2017.

### (b) Standard of Review

[6] Statutory interpretation presents a question of law, which an appellate court reviews independently of the lower court's determination. *State v. Lovvorn*, 303 Neb. 844, 932 N.W.2d 64 (2019).

### (c) Analysis

Valentine's assertions that he was denied due process and convicted of possession of a deadly weapon by a prohibited person when there was insufficient evidence presented to prove his guilt both center on the correct interpretation of § 28-1206, as it existed in October 2017. As such, we

must first analyze the appropriate statutory interpretation of this section.

[7-10] The fundamental objective of statutory interpretation is to ascertain and carry out the Legislature's intent. *State v. McColery*, 301 Neb. 516, 919 N.W.2d 153 (2018). Statutory language is to be given its plain and ordinary meaning. *State v. Garcia*, 301 Neb. 912, 920 N.W.2d 708 (2018). Only if a statute is ambiguous or if the words of a particular clause, taken literally, would plainly contradict other clauses of the same statute, lead to some manifest absurdity, to some consequences which a court sees plainly could not have been intended, or to a result manifestly against the general term, scope, and purpose of the law, may the court apply the rules of construction to ascertain the meaning and intent of the lawgiver. *State v. Frederick*, 291 Neb. 243, 864 N.W.2d 681 (2015). A statute is ambiguous if it is susceptible of more than one reasonable interpretation, meaning that a court could reasonably interpret the statute either way. *State v. McColery, supra*.

The district court found that the language of § 28-1206, as it appeared in October 2017 was ambiguous because there was neither an "and" nor an "or" between subsections (1)(a)(i), (1)(a)(ii), and (1)(a)(iii). We agree with the district court's finding. The plain meaning of the statute as it then existed is not readily discernible because the language is susceptible to more than one reasonable interpretation. Specifically, it is not clear from the language of the statute if the Legislature intended to define a prohibited person as someone who is a convicted felon, who is a fugitive from justice, or who is subject to a current domestic violence or harassment protection order, or if it intended to define a prohibited person as someone who fits into all three categories simultaneously. And, as the district court noted in its order, "it could be argued that it is likely that the Legislature intended the word 'or' to be present within the statute as much as it is likely that the Legislature intended the word 'and' to be present within the statute."

[11] Given that we have found the language of § 28-1206, as it existed in October 2017, to be ambiguous, we turn to the legislative history to aid in our interpretation. An appellate court can examine an act's legislative history if a statute is ambiguous or requires interpretation. *State v. McColery, supra*. As we discussed more thoroughly above, the legislative history surrounding the 2017 and 2018 revisions to § 28-1206 clearly indicates that the Legislature intended that a prohibited person be defined as someone who met only one of the three criteria listed in subsections (1)(a)(i), (1)(a)(ii), and (1)(a)(iii).

Prior to the 2017 revisions to the statute, § 28-1206 clearly defined a prohibited person as someone who met only one of the criteria listed. See § 28-1206 (Reissue 2016). The Legislature revised § 28-1206 in 2017 in order to provide an exemption within the Nebraska Criminal Code regarding possession of deadly weapons by exempting archery equipment and knives intended for recreational purposes. The Legislature also added those individuals who are subject to harassment protection orders to the list of those prohibited from weapon possession under the criminal code. Nowhere in the legislative history of § 28-1206 is there any indication that the Legislature intended to change the definition of a prohibited person to include only those individuals who met all three criteria listed in subsections (1)(a)(i), (1)(a)(ii), and (1)(a)(iii) simultaneously. In addition, the removal of the word "or" between subsections (1)(a)(ii) and (1)(a)(iii) was clearly unintended, as the Legislature amended § 28-1206, effective July 19, 2018, to correct this "typographical error." See Introducer's Statement of Intent, L.B. 848, Judiciary Committee, 105th Leg., 2d Sess. (Jan. 19, 2018).

We agree with the district court that § 28-1206, as it appeared in October 2017, should be interpreted as if the disjunctive "or" existed between subsections (1)(a)(ii) and (1)(a)(iii). Thus, § 28-1206 defines a "prohibited person" as someone who meets one of the listed elements, not all of

them. Given our interpretation of the statutory language, we do not find that Valentine's right to due process was violated or that he was convicted of being a prohibited person in possession of a deadly weapon without sufficient evidence. A concealed firearm bearing Valentine's DNA was located in the vehicle he was driving, and the parties stipulated that Valentine was previously convicted of a felony.

### 3. Jury Instructions

Valentine asserts that the district court erred by failing to properly instruct the jury prior to its deliberations. Specifically, Valentine claims that the district court erred by improperly instructing the jury regarding the elements and requisite intent necessary to find Valentine guilty of possession of a deadly weapon by a prohibited person and regarding the definition of the term "possession."

We address each of these claims in turn.

### (a) Standard of Review

[12] Whether jury instructions are correct is a question of law, which an appellate court resolves independently of the lower court's decision. *State v. Bigelow*, 303 Neb. 729, 931 N.W.2d 842 (2019).

### (b) Jury Instruction No. 3

Valentine first argues that the district court erred in giving jury instruction No. 3, which delineated the charges brought against Valentine by the State. In particular, Valentine takes issue with the district court's recitation of the charge of possession of a deadly weapon by a prohibited person. Valentine's argument mirrors the argument he made with regard to the district court's interpretation of § 28-1206, as it appeared in October 2017. Valentine asserts that the court should have inserted an "and" between subsections (1)(a)(i), (1)(a)(ii), and (1)(a)(iii), rather than an "or," based on Valentine's assertion that in October 2017, § 28-1206 required that the State prove that Valentine had previously been convicted of a felony,

was a fugitive from justice, and was the subject of a current protection order. As we discussed above, § 28-1206 requires only that Valentine be either a convicted felon, a fugitive from justice, or subject to a current protection order, not all three. As such, Valentine's assertion regarding jury instruction No. 3 must fail. The district court correctly instructed the jury regarding the charge of possession of a deadly weapon by a prohibited person when it included an "or" between subsections (1)(a)(ii) and (1)(a)(iii) of § 28-1206.

### (c) Jury Instruction No. 6

Valentine next asserts that the district court erred in giving jury instruction No. 6, which delineated the specific elements the State needed to prove in order for the jury to find Valentine guilty of possession of a deadly weapon by a prohibited person. The portion of jury instruction No. 6 at issue reads as follows:

> The elements of the crime of Possession of a Deadly Weapon (Firearm) by a Prohibited Person, as charged in Count 2 of the Information, are:
> 1. That the defendant did possess a deadly weapon to [sic] specifically: a firearm; and
> 2. That the Defendant did so on or about October 12, 2017 in Douglas County, Nebraska; and
> 3. That the Defendant had previously been convicted of a felony.

Valentine requested that the court change jury instruction No. 6 such that "instead of reading 'the defendant did possess a deadly weapon,'" it would read, "'the defendant did knowingly or intentionally possess a deadly weapon.'" Brief for appellant at 26. The district court declined to make this change, noting that jury instruction No. 9, which provided a definition of "possession," included "the language that [Valentine] is requesting."

[13,14] In an appeal based on a claim of an erroneous jury instruction, the appellant has the burden to show that the

questioned instruction was prejudicial or otherwise adversely affected a substantial right of the appellant. *State v. Swindle*, 300 Neb. 734, 915 N.W.2d 795 (2018). All the jury instructions must be read together, and if, taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and the evidence, there is no prejudicial error necessitating reversal. *Id*.

Jury instruction No. 6 delineates the elements of possession of a deadly weapon by a prohibited person using the exact language contained within § 28-1206. The Supreme Court has held that "[i]n giving instructions to the jury, it is proper for the court to describe the offense in the language of the statute." *State v. Swindle*, 300 Neb. at 744, 915 N.W.2d at 805. The court explained that although the law does not require that a jury instruction track the exact language of the statute, using the specific language of a statute is an effective means of implementing the intent of the Legislature. *State v. Swindle, supra*. Given that the district court utilized the statutory language in instructing the jury on the elements of possession of a deadly weapon by a prohibited person, we cannot say that the court erred in giving jury instruction No. 6.

Moreover, we note that Valentine cannot show that he was in any way prejudiced by the district court's decision to give jury instruction No. 6 without the amendments requested by Valentine. When looking at the jury instructions as a whole, it is clear that jury instruction No. 9 explains the requisite intent necessary to establish whether Valentine was in possession of the deadly weapon. As such, jury instruction No. 9 provides the information that Valentine asked the district court to include in jury instruction No. 6. Accordingly, it is clear that the jury was adequately instructed regarding the elements of possession of a deadly weapon by a prohibited person.

(d) Jury Instruction No. 9

Finally, Valentine asserts that the district court erred in giving jury instruction No. 9, which, as we explained above,

provides a definition of the term "possession." The portion of jury instruction No. 9 at issue reads as follows: "'Possession' means either knowingly having it on one's person or knowing of the object's presence and having control over the object." Valentine submitted a proposed jury instruction No. 9 which changed the definition of the term "possession" as follows: "'Possession' of a firearm means knowingly having it on one's person or knowing of the object's presence and having control over the object. Proximity, standing alone, is insufficient to prove possession." The district court refused to give Valentine's proposed jury instruction.

[15] To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction. *State v. Bigelow*, 303 Neb. 729, 931 N.W.2d 842 (2019).

[16] Here, the district court used a pattern jury instruction regarding the definition of possession. See NJI2d Crim. 4.2. Whenever an applicable instruction may be taken from the Nebraska Jury Instructions, that instruction is the one which should usually be given to the jury in a criminal case. *State v. Morgan*, 286 Neb. 556, 837 N.W.2d 543 (2013). In fact, recently, in *State v. Castellanos*, 26 Neb. App. 310, 918 N.W.2d 345 (2018), this court upheld a jury instruction defining possession which was directly patterned after NJI2d Crim. 4.2. In *Castellanos*, the defendant requested that the district court include the following language when instructing the jury regarding the definition of possession: "'The Defendant's mere presence in an area where items were ultimately discovered is not enough to establish that the defendant was in "possession" of said items.'" 26 Neb. App. at 326, 918 N.W.2d at 358. The defendant also requested that the court instruct the jury as follows: "'Assuming an item is not found on the defendant's person, the defendant's proximity to the item,

standing alone, is insufficient to prove "possession."'" *Id*. We affirmed the district court's decision to rely on the pattern jury instruction defining the term "possession" rather than using the defendant's proposed definition.

As in *State v. Castellanos, supra*, Valentine asked the district court to depart from the pattern jury instruction and provide the jury with a more detailed definition of possession. Although Valentine's proposed jury instruction No. 9 was not an incorrect statement of the law, Valentine cannot show that he was prejudiced by the district court's refusal of his proposed jury instruction. When the instructions given are considered together, it is clear that the district court properly instructed the jury on the definition of the term "possession," and the court did not err in refusing to give Valentine's proposed jury instruction.

## V. CONCLUSION

We conclude that the district court did not err in overruling Valentine's motion to suppress, in interpreting § 28-1206, or in instructing the jury. Accordingly, Valentine's convictions and sentences are affirmed.

Affirmed.