Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
12/15/2020 08:07 AM CST

**State of Nebraska, appellee, v.
Charles E. Garza, Jr., appellant.**

___ N.W.2d ___

Filed December 8, 2020.    No. A-19-474.

1. **Constitutional Law: Search and Seizure: Motions to Suppress:
   Appeal and Error.** In reviewing a trial court's ruling on a motion to
   suppress based on a claimed violation of the Fourth Amendment, an
   appellate court applies a two-part standard of review. Regarding histori-
   cal facts, an appellate court reviews the trial court's findings for clear
   error, but whether those facts trigger or violate Fourth Amendment pro-
   tection is a question of law that an appellate court reviews independently
   of the trial court's determination.
2. **Motions to Suppress: Trial: Pretrial Procedure: Appeal and Error.**
   When a motion to suppress is denied pretrial and again during trial on
   renewed objection, an appellate court considers all the evidence, both
   from trial and from the hearings on the motion to suppress.
3. **Jury Instructions: Appeal and Error.** Whether jury instructions are
   correct is a question of law, which an appellate court resolves indepen-
   dently of the lower court's decision.
4. **Search and Seizure: Warrantless Searches: Probable Cause: Motor
   Vehicles.** As a general rule, automobiles, including containers and pack-
   ages that may contain the object of a search, may be searched without
   a warrant provided there is probable cause to believe the vehicle con-
   tains contraband.
5. ____: ____: ____: ____. Under the automobile exception, a warrantless
   search of a vehicle with probable cause is lawful so long as the vehicle
   is mobile.
6. **Search and Seizure: Warrantless Searches: Motor Vehicles.** A war-
   rantless search of a vehicle is lawful even after it has been impounded
   and is in police custody.
7. **Probable Cause: Words and Phrases.** Probable cause is a flexible
   standard which depends on the totality of the circumstances; it does not

demand any showing that such a belief be correct or more likely true than false, nor does it require the same type of specific evidence of each element of an offense as would be needed to support a conviction.

8. ____: ____. Probable cause requires a fair probability that contraband or evidence of a crime will be found.

9. **Search Warrants: Affidavits.** Among the ways in which the reliability of an informant may be established are by showing in the affidavit to obtain a search warrant that (1) the informant has given reliable information to police officers in the past, (2) the informant is a citizen informant, (3) the informant has made a statement that is against his or her penal interest, and (4) a police officer's independent investigation establishes the informant's reliability or the reliability of the information the informant has given.

10. **Search Warrants: Affidavits: Probable Cause: Appeal and Error.** In reviewing the strength of an affidavit submitted as a basis for finding probable cause to issue a search warrant, an appellate court applies a totality of the circumstances test. The question is whether, under the totality of the circumstances illustrated by the affidavit, the issuing magistrate had a substantial basis for finding that the affidavit established probable cause.

11. **Search and Seizure: Search Warrants.** Observing objects in plain view violates no reasonable expectation of privacy, which obviates the need for a search warrant.

12. **Police Officers and Sheriffs: Search and Seizure: Evidence.** A warrantless seizure is justified under the plain view doctrine if (1) a law enforcement officer has a legal right to be in the place from which the object subject to the seizure could be plainly viewed, (2) the seized object's incriminating nature is immediately apparent, and (3) the officer has a lawful right of access to the seized object itself.

13. **Police Officers and Sheriffs: Search and Seizure: Probable Cause.** For an object's incriminating nature to be immediately apparent, the officer must have probable cause to associate the property with criminal activity.

14. **Search and Seizure: Search Warrants.** Any container that may conceal the object of a search authorized by a warrant may be opened immediately.

15. **Jury Instructions: Proof: Appeal and Error.** To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction.

16. **Jury Instructions: Appeal and Error.** All the jury instructions must be read together, and if, taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and evidence, there is no prejudicial error necessitating reversal.

17. **Criminal Law: Jury Instructions.** If there is an applicable instruction in the Nebraska Jury Instructions, the court should usually give this instruction to the jury in a criminal case.

18. **Appeal and Error.** To be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error.

Appeal from the District Court for Scotts Bluff County: Leo P. Dobrovolny, Judge. Affirmed.

Sarah P. Newell, of Nebraska Commission on Public Advocacy, for appellant.

Douglas J. Peterson, Attorney General, and Nathan A. Liss for appellee.

Pirtle, Riedmann, and Arterburn, Judges.

Arterburn, Judge.

## I. INTRODUCTION

Charles E. Garza, Jr., was convicted in the district court for Scotts Bluff County, Nebraska, of possession of methamphetamine, possession with intent to deliver methamphetamine, possession with intent to deliver at least 10 grams but less than 28 grams of methamphetamine, and three counts of possession of a firearm by a prohibited person. The questions pending before this court are whether the district court erred in denying motions to suppress the searches of his car, his home, and his recreational vehicle (RV) and whether the court should have given Garza's proposed jury instruction defining "possession." We affirm the judgment of the district court.

## II. BACKGROUND

In January 2017, the Western Nebraska Intelligence Narcotics Group (the task force) in Gering, Nebraska, was

investigating local drug activity and Garza became a target. The task force was working with a "cooperating individual" (CI), an acquaintance and part-time employee of Garza's. The CI completed two "controlled buys" from Garza in cooperation with the task force. Garza was arrested prior to the completion of a third controlled buy.

The first controlled buy took place January 16, 2017, outside a convenience store in Gering. The CI bought a quarter ounce of methamphetamine from Garza for $350. The deal took place in Garza's Honda Accord. The CI was wearing a transmitter, and the task force conducted audio and video surveillance for the duration of the encounter. The substance purchased by the CI was sent to the Nebraska State Patrol Crime Laboratory for testing and was confirmed to be methamphetamine.

The second transaction took place on January 20, 2017, outside a hospital in Scottsbluff, Nebraska. The CI bought a half ounce of methamphetamine from Garza for $700. The deal occurred in Garza's van. The CI was again wearing a transmitter, and the task force again conducted audio and video surveillance. The substance purchased by the CI was sent to the Nebraska State Patrol Crime Laboratory for testing and was confirmed to be methamphetamine.

The third transaction was set to take place on February 1, 2017, outside a bank in Scottsbluff. The CI had arranged to buy a full ounce of methamphetamine for $1,400, which was twice the going rate for such an amount. Det. James Jackson, a sergeant with the Gering Police Department and member of the task force at the time, testified that the task force had no intention of allowing the third transaction to take place, because it did not want to risk losing such a substantial sum of money. Garza's arrival at the location for the buy was delayed for over 2 hours. Telephone contact between Garza and the CI indicated Garza claimed to have had a flat tire. During the period of time the CI was waiting for Garza to appear, members of the task force located the Honda parked at a local motel and engaged in surveillance of the Honda. The car did not appear

to have a flat tire. Members of the task force observed Garza go from his car to his motel room, and back to his car. When Garza appeared again and got back into the car, the task force members who had been conducting surveillance of Garza and his car arrested Garza in the motel parking lot.

After Garza was arrested, handcuffed, and taken to the police department, the second officer on the scene at the motel was instructed to have the Honda towed to the impound lot. The car was under observation by another sergeant of the Gering Police Department until the tow truck arrived at the motel. The car was locked up after it had been towed to the impound lot. The other sergeant gave the keys to Jackson, who was at the police department by this time in order to interview Garza.

After Jackson interviewed Garza, Jackson applied for a search warrant for the Honda in which Garza had been sitting when he was arrested. This was the same car Jackson had observed during the first controlled buy made by the CI. After obtaining the search warrant, Jackson searched the Honda in the impound lot, because it was a secure area. Evidence discovered in the Honda during the search included a plastic bag containing approximately 28.7 grams of suspected methamphetamine, found in the console, and Garza's driver's license, found in the visor. Following the search of the Honda, and as part of the ongoing investigation, Jackson applied for and was granted a search warrant for the address listed on the driver's license and an RV in which Garza was living, which was parked at a nearby campground. Searches of the home and the RV turned up a ballistic vest and face mask, numerous firearms from gun safes, ammunition, several cell phones, cash, and methamphetamine. Garza filed motions to suppress all of the evidence seized in the searches of his car, his home, and his RV for the reason the supporting affidavits lacked probable cause and because the searches exceeded the scope of the warrants. The district court overruled all of the motions to suppress prior to trial. Garza renewed his motions to suppress at the start of the trial, and they were all overruled again.

## III. ASSIGNMENTS OF ERROR

Garza assigns as error the district court's failure to suppress evidence seized from Garza's car, his home, and his RV and the court's failure to utilize his proposed jury instruction regarding constructive possession.

## IV. STANDARD OF REVIEW

[1,2] In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protection is a question of law that an appellate court reviews independently of the trial court's determination. *State v. Hartzell*, 304 Neb. 82, 933 N.W.2d 441 (2019). When a motion to suppress is denied pretrial and again during trial on renewed objection, an appellate court considers all the evidence, both from trial and from the hearings on the motion to suppress. *Id.*

[3] Whether jury instructions are correct is a question of law, which an appellate court resolves independently of the lower court's decision. *State v. Lee*, 304 Neb. 252, 934 N.W.2d 145 (2019).

## V. ANALYSIS

### 1. Search Warrants

#### (a) Search of Honda

Garza objects to the search of his Honda, because the search was beyond the scope of the warrant and was not made in good faith. The warrant itself authorized only the search of the "above described cellular phone," and the warrant was issued prior to the decision in *State v. Stelly*, 304 Neb. 33, 932 N.W.2d 857 (2019), which held that detailed information in a supporting affidavit cured any defect in the warrant resulting from a scrivener's error in misidentifying the item to be searched. Garza argues a search which is not described in the warrant is not a search made in good faith, because a

"well-trained officer would have known that the search authorized was limited to the cellular phone described therein." Brief for appellant at 19. Garza posits that "in all likelihood, law enforcement prepared the warrant language," and that while sloppy, "they should be held to their own language in order to discourage future errors and minimize the discretion afforded to the executing officer." *Id.* at 20.

Garza goes on to suggest that even if this court finds the methamphetamine and driver's license were properly seized, the affidavit in support of the warrant lacks probable cause, because law enforcement is relying on an unreliable informant with ulterior motives. Garza argues the CI was a "police tipster," someone who acts for money, leniency, or some other selfish purpose, rather than a "citizen informer," whose only motive is to help law enforcement in the suppression of crime. *Id.* at 21. Garza argues the affidavit never described the "'controlled buy'" process, nor did it contain any information about whether or not Jackson witnessed the buys or complied with the controlled buy protocols as some evidence of the CI's credibility. *Id.* at 22. Finally, he contends that the affidavit does not describe how the things to be seized were connected to any criminal activity or why they would be found in the Honda.

[4,5] While we do not agree with Garza's assertions, we find that the totality of the evidence adduced at the suppression hearing and at trial establishes that even if the affidavit were insufficient, the police possessed adequate probable cause to search the Honda without obtaining a search warrant. Garza was arrested while in his car in the motel parking lot, following surveillance by law enforcement, at a time when he was late for the third controlled buy. Law enforcement expected Garza to have an ounce of methamphetamine in his possession, ready to sell to the CI for $1,400. Under these circumstances, when it is reasonable to believe evidence relevant to the crime of arrest may be found in a vehicle, the U.S. Supreme Court has established an independent exception for a warrantless search of a vehicle's passenger compartment

due to circumstances unique to the vehicle context. As a general rule, automobiles, including containers and packages that may contain the object of a search, may be searched without a warrant provided there is probable cause to believe the vehicle contains contraband. See *United States v. Ross*, 456 U.S. 798, 102 S. Ct. 2157, 72 L. Ed. 2d 572 (1982). Under the automobile exception, a warrantless search of a vehicle with probable cause is lawful so long as the vehicle is mobile. See *State v. Seckinger*, 301 Neb. 963, 920 N.W.2d 842 (2018). Our Supreme Court has held:

> In light of the overwhelming weight of authorities, we hold that the requirement of ready mobility for the automobile exception is met whenever a vehicle that is not located on private property is capable or apparently capable of being driven on the roads or highways. This inquiry does not focus on the likelihood of the vehicle's being moved under the particular circumstances and is generally satisfied by the inherent mobility of all operational vehicles. It does not depend on whether the defendant has access to the vehicle at the time of the search or is in custody, nor on whether the vehicle has been impounded. The purpose of the ready mobility requirement is to distinguish vehicles on public property from fixed, permanent structures, in which there is a greater reasonable expectation of privacy.

*State v. Rocha*, 295 Neb. 716, 755, 890 N.W.2d 178, 207 (2017).

[6] Moreover, a warrantless search of a vehicle is lawful even after it has been impounded and is in police custody. See *Michigan v. Thomas*, 458 U.S. 259, 102 S. Ct. 3079, 73 L. Ed. 2d 750 (1982). Here, Garza was arrested in his car in a public parking lot. The car was then towed to a police impound lot where it was searched.

[7,8] Probable cause is a flexible standard which depends on the totality of the circumstances. *State v. Seckinger, supra*. It does not demand any showing that such a belief be correct

or more likely true than false. *State v. Au*, 285 Neb. 797, 829 N.W.2d 695 (2013). Nor does it require the same type of specific evidence of each element of an offense as would be needed to support a conviction. *State v. Brewer*, 190 Neb. 667, 212 N.W.2d 90 (1973). What is required is a "fair probability" that contraband or evidence of a crime will be found. See *State v. Goynes*, 303 Neb. 129, 139, 927 N.W.2d 346, 353 (2019), *cert. denied* ___ U.S. ___, 140 S. Ct. 545, 205 L. Ed. 2d 345. Based on the totality of the evidence adduced at the hearing on the motion to suppress and at trial, we find that probable cause to search Garza's Honda existed at the time of the search and that the automobile exception to the warrant requirement applied. Therefore, though we do not limit our analysis to the information provided in the affidavit for the search warrant of the Honda, we find that the district court did not err in denying the motion to suppress the evidence found inside it.

The affidavit in support of the warrant and the testimony at trial detail the controlled buys completed in January 2017. A controlled buy was described by Jackson at trial as an operation where law enforcement controls as many variables as possible. Before sending a CI to buy drugs, the CI is searched to be sure the CI does not have any money, contraband, or weapons on his or her person. A recording device is affixed to the person of the CI, and the CI is given "pre-recorded buy money," which means law enforcement has made photocopies of the money for comparison purposes in case the money is never recovered. If a car is involved, the CI's car is searched as well. Then law enforcement follows the CI and surveils the CI's activities while the buy is underway. Once a purchase has been made, the CI is searched again for any money and the drugs. If drugs have been purchased, the drugs are retrieved and sent to the laboratory for testing to be sure the items purchased under the controlled conditions are actually controlled substances. The testimony of Jackson and the affidavit in support of the warrant specifically described the two controlled

buys occurring during the 2 weeks prior to Garza's arrest on February 1, 2017.

[9] The January 16, 2017, controlled buy took place in the Honda, which encounter was videotaped by law enforcement. Jackson confirmed the license plate on the car was actually the Honda Accord which was registered to Garza. When the buy was complete, the CI was searched by Jackson, the recording device was removed from his person, and the drugs were taken from him. The CI did not have any of the prerecorded money left after making the buy. By the time the February 1 controlled buy was underway, the CI had proved to be reliable. Among the ways in which the reliability of an informant may be established are by showing in the affidavit to obtain a search warrant that (1) the informant has given reliable information to police officers in the past, (2) the informant is a citizen informant, (3) the informant has made a statement that is against his or her penal interest, and (4) a police officer's independent investigation establishes the informant's reliability or the reliability of the information the informant has given. *State v. Manning*, 263 Neb. 61, 638 N.W.2d 231 (2002). The affidavit and testimony make clear that reliable information had already been given to law enforcement by the CI. And, law enforcement independently corroborated the January 2017 buys with surveillance. The "ruse" for the February 1 controlled buy was to have Garza meet the CI at a bank while the CI was in Scottsbluff having his income taxes prepared. The purchase was to be an ounce of methamphetamine in exchange for $1,400. Audio surveillance made it clear the CI was having trouble persuading Garza to come to the bank where video surveillance was in place. Jackson then decided to send two other investigators to Garza's location and arrest him there. The other investigators had located Garza sitting in his car in a motel parking lot. When Garza was arrested in his car, it was reasonable to expect he would have an ounce of methamphetamine ready for sale, because a sale had been negotiated and was expected to take place near the bank.

Our analysis of the facts contained in the record, along with the facts establishing the credibility of the CI, were sufficient to establish probable cause to search the Honda. We believe there was sufficient information present for law enforcement to believe there was a fair probability that contraband or evidence of a drug crime would be found in the car at the time of Garza's arrest. See *State v. Goynes*, 303 Neb. 129, 927 N.W.2d 346 (2019), *cert. denied ___ U.S. ___*, 140 S. Ct. 545, 205 L. Ed. 2d 345. See, also, *Riley v. California*, 573 U.S. 373, 134 S. Ct. 2473, 189 L. Ed. 2d 430 (2014)*.* Accordingly, the search of the Honda was supported by sufficient probable cause and the district court was not clearly wrong in denying the motion to suppress the evidence found in the Honda.

Finally, we address Garza's argument that the scope of the search exceeded that authorized by the search warrant. Having found that the officers had probable cause to search the Honda and that the automobile exception to the warrant requirement applies, the allowable scope of the search is not determined by the warrant, but by the nature of the contraband or evidence of a crime that was being searched for. Here, there is no evidence that the search went beyond the Honda or its contents, all of which was supported by probable cause.

### (b) Search of Schmid Drive Residence

Garza argues the affidavit for a warrant to search his residence on Schmid Drive did not provide probable cause, the seizure of firearms from the residence went beyond the scope authorized by the search warrant, and the opening of the gun safe found in the residence required a separate warrant.

### (i) Probable Cause

The search of the Honda resulted in the discovery of Garza's driver's license, which identified the Schmid Drive address as his residence. Garza confirmed this was his address during his interview with Jackson at the Gering Police Department after his arrest on February 1, 2017. Jackson's affidavit in support of a search warrant for the residence included all of the past

information regarding the controlled buys made from Garza, the arrangements for the buy of an ounce of methamphetamine, and the ultimate discovery of 28.7 grams of methamphetamine in his car on February 1. The affidavit, drafted on February 2, also recounts that the original CI reported to Jackson that Garza's girlfriend, Carmen Scott, had spoken to him about getting Garza out of jail. The CI reported Scott knew there was a safe at the address which contained at least $3,000 and more methamphetamine. The CI reported Scott talked about selling the methamphetamine in order to get Garza out of jail. The CI reported Scott knew two of the numbers in the combination to the safe but did not have the other two. Jackson was also aware one of the investigators working on the case listened to a jail telephone call between Scott and Garza. During the call, Garza reported his mother and brother had the combination to the safe. Scott told Garza she had already asked them for the combination to no avail. Garza went on to tell Scott there was "something in the blue truck that would help" her. Jackson was aware that Garza owned a "blue Volvo Semi truck." The information reported by the CI was corroborated by the jail telephone call. Jackson concluded his affidavit by indicating he had probable cause to believe evidence in the form of "illegal drugs, plastic bags, digital scales, pay/owe sheets, cellular phones, and US Currency" were located at the Schmid Drive residence "and inside a safe inside the residence."

[10] The Nebraska Supreme Court set out the standard for reviewing the strength of an affidavit for a search warrant in *State v. Goynes*, 303 Neb. 129, 927 N.W.2d 346 (2019), *cert. denied* ___ U.S. ___, 140 S. Ct. 545, 205 L. Ed. 2d 345. The court stated:

> In reviewing the strength of an affidavit submitted as a basis for finding probable cause to issue a search warrant, an appellate court applies a totality of the circumstances test. The question is whether, under the totality of the circumstances illustrated by the affidavit, the issuing magistrate had a substantial basis for finding that the affidavit

established probable cause. Probable cause sufficient to justify issuance of a search warrant means a fair probability that contraband or evidence of a crime will be found. In evaluating the sufficiency of an affidavit used to obtain a search warrant, an appellate court is restricted to consideration of the information and circumstances contained within the four corners of the affidavit, and evidence which emerges after the warrant is issued has no bearing on whether the warrant was validly issued.

*Id.* at 138-39, 927 N.W.2d at 353-54.

Applying the standards defined by *Goynes*, we believe probable cause has been established by the affidavit in support of the warrant. The address of the house was confirmed by Garza during his interview after his driver's license was located in the Honda. The methamphetamine found in the car was consistent with the amount to be sold in the February 1, 2017, controlled buy. The CI had proved reliable following two completed controlled buys and his report of a conversation with Garza's girlfriend about the contents of a safe at the house as evidence of criminal activity was independently confirmed by law enforcement. Applying the totality of the circumstances test, we agree with the district court that a fair probability existed that contraband or evidence of a crime would be found in the residence. Therefore, we find no error in the court's finding that probable cause existed for the search of the house.

### (ii) Scope of Warrant

Garza argues the seizure of the firearms at the house exceeded the scope of the warrant. His argument is twofold. First, he argues that firearms were not included as items to be seized in the original warrant for the search of the house. Second, he argues that the warrant authorizing the search of the house was not sufficient to authorize a search of a safe found within the house. We note that during the course of trial, evidence was adduced regarding weapons that were found in a bedroom in the house and in a gun safe located in the basement of the house. Garza was charged and tried for being a

felon in possession of two firearms found in the gun safe (an SKS rifle and an "AR[-]15 style rifle") and two guns found in a gun safe in his RV (a handgun and a shotgun). He was found guilty as to both guns found in the RV and the AR-15 style rifle found in the house, but was found not guilty as to the SKS rifle. He was not tried as to any of the remaining guns found elsewhere in the residence. All of the guns found in the residence and RV were seized, however, and evidence was presented thereon during trial.

[11-13] We first address the seizure of firearms that were not contained in the gun safe. Observing objects in plain view violates no reasonable expectation of privacy, which obviates the need for a search warrant. *Horton v. California*, 496 U.S. 128, 110 S. Ct. 2301, 110 L. Ed. 2d 112 (1990). A warrantless seizure is justified under the plain view doctrine if (1) a law enforcement officer has a legal right to be in the place from which the object subject to the seizure could be plainly viewed, (2) the seized object's incriminating nature is immediately apparent, and (3) the officer has a lawful right of access to the seized object itself. *State v. Borst*, 281 Neb. 217, 795 N.W.2d 262 (2011); *State v. Vyhnalek*, 19 Neb. App. 904, 814 N.W.2d 768 (2012). For an object's incriminating nature to be immediately apparent, the officer must have probable cause to associate the property with criminal activity. *State v. Keup*, 265 Neb. 96, 655 N.W.2d 25 (2003).

The Supreme Court has held that """"dealers in narcotics keep firearms on their premises as tools of the trade almost to the same extent as they keep scales, glassine bags, cutting equipment and other narcotics equipment."""" *State v. Groves*, 239 Neb. 660, 676, 477 N.W.2d 789, 800 (1991) (quoting *United States v. Milham*, 590 F.2d 717 (8th Cir. 1979)). The *Groves* court also held that in drug-related prosecutions, evidence relating to guns in a defendant's possession is relevant. Because law enforcement was investigating crimes involving the distribution of narcotics, the incriminating nature of firearms would have been readily apparent to the

officers lawfully in the home pursuant to the search warrant. Seizing the weapons as relevant evidence of illegal drug activity was not unreasonable and did not violate Garza's Fourth Amendment rights.

With regard to the firearms found within the gun safe, several issues must be considered. First, we note that two separate affidavits and search warrants relate to the contents of the safe. In the first affidavit, the affiant provided specific information related from the CI about the presence of methamphetamine in the safe. The CI reported that Garza's girlfriend had told him that the safe contained $3,000 cash and methamphetamine, all of which could be utilized to bond Garza out of jail. Therefore, while the warrant did not specifically authorize the officers to search the safe, the safe certainly constituted a place within the residence where contraband could be found.

Once the safe was found, Jackson completed an additional affidavit for a search warrant. In that affidavit, all of the facts contained in the first warrant to search the house were listed. The affidavit then included information on what the search of the house had revealed to that point, including a bag of suspected methamphetamine found on the refrigerator in the kitchen, which tested positive in a presumptive test, and the guns in the upstairs bedroom. The affidavit also related that a safe had been found in the basement. The affidavit requested that the police be allowed to further search the house and specifically included the safe as something to be searched for, among other items, illegal drugs, currency, firearms, ammunition, and items related to firearms such as holsters, gun cases, and body armor. A second warrant was issued. It added ammunition, body armor, and gun cases to the list of items to be obtained, but did not specifically include firearms. In addition, the search warrant itself does not specifically authorize the search of the safe, but instead lists only the Schmid Drive residence as the place to be searched. While it appears that the sole reason law enforcement sought the search warrant was as a precautionary step to obtain permission to search the safe,

the warrant itself is no more specific than the original warrant as to the location to be searched.

Despite the shortcomings of the warrant, we find that the warrants authorizing the search of the house also authorized the search of the safe found in the house. In *United States v. Ross*, 456 U.S. 798, 820-21, 102 S. Ct. 2157, 72 L. Ed. 2d 572 (1982), the Court stated:

> A lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search. Thus, a warrant that authorizes an officer to search a home for illegal weapons also provides authority to open closets, chests, drawers, and containers in which the weapon might be found. . . . When a legitimate search is under way, and when its purpose and its limits have been precisely defined, nice distinctions between closets, drawers, and containers, in the case of a home . . . must give way to the interest in the prompt and efficient completion of the task at hand.

[14] The Court went on to explain that any container that may conceal the object of a search authorized by a warrant may be opened immediately. In *State v. Salas*, 237 Neb. 546, 466 N.W.2d 790 (1991), the court, applying the foregoing language from *Ross*, held that officers were not required to seek a subsequent search warrant in order to search a locked box for narcotics. The search warrant for the premises in which the locked box was found was sufficient to authorize the search of the box. Here, Jackson took the step of seeking a second warrant for the safe. We do not read the warrant which failed to list the safe specifically as an indication that the judge was denying the police access to the safe. We find, under the facts of this case, that by authorizing the police to search the entire premises at the Schmid Drive residence, the court did authorize a search of any containers within that residence, including the safe located in the basement. Once the safe was opened,

the firearms located inside were in plain view, were immediately recognized as tools associated with narcotics trafficking, and were subject to seizure. The district court was not clearly wrong in overruling Garza's motion to suppress the search of the Schmid Drive residence and the safe contained therein.

### (c) Search of RV

Garza argues the search of his RV was also illegal for many of the same reasons he believes the search of his residence was illegal—that probable cause for the search was lacking and opening the safe from the RV required a separate warrant.

### *(i) Probable Cause*

The affidavit in support of the application for a warrant to search the RV contained all of the facts already known to law enforcement and contained in the affidavits in support of the warrants for searches of the Honda and the Schmid Drive residence. The affidavit also contained additional facts discovered following the search of the home in order to establish probable cause for the search of the RV. Jackson reported that law enforcement noticed surveillance cameras affixed to the Schmid Drive residence and directed toward the street. Once inside the home, law enforcement discovered methamphetamine in a plastic bag on top of the refrigerator and four rifles in a bedroom. Jackson also reported that during the search of the home, Garza's girlfriend, Scott, was standing a block away from the home watching the scene. Jackson approached Scott and asked her about the blue truck mentioned in the jail telephone call. Scott reported Garza had left her some clothes in the blue truck. Scott also told Jackson that she and Garza were living in an RV, which was parked at a nearby campground. Jackson specifically identified the RV by its license plate number and lot space. Jackson was given authority to search for "[i]llegal drugs, plastic bags, digital scales, pay/owe sheets, cellular phones, US currency, firearms, ammunition, body armor, holsters, gun cases, [and] surveillance systems."

Again, applying the flexible totality of the circumstances and "fair probability that contraband or evidence of a crime will be found" standards as described in *State v. Goynes*, 303 Neb. 129, 139, 927 N.W.2d 346, 353 (2019), *cert. denied* ___ U.S. ___, 140 S. Ct. 545, 205 L. Ed. 2d 345, we believe the affidavit contained sufficient probable cause that contraband would be found in the RV. We therefore believe there was sufficient probable cause for the warrant to issue.

### (ii) Scope of Warrant

Garza argues that there was no evidence in the affidavit that supported probable cause that any weapons previously found were linked to criminal activity on Garza's part. He argues the seizure of weapons from the RV, and from the gun safe in the RV specifically, was beyond the scope of the warrant, because probable cause was lacking to authorize a specific seizure of weapons. We previously concluded that firearms are regarded as tools of the trade in drug enterprises and that a warrant for drug activity is likely to result in the discovery of weapons. And because weapons were discovered during the search of the home, it was reasonable for law enforcement to conclude additional weapons could be found in the search of the RV. We believe that there was probable cause to include weapons in the warrant for the RV and that the warrant specifically identified weapons and ammunition as evidence to be seized. We are not persuaded the seizure of the weapons was not supported by probable cause or was beyond the scope of the warrant.

Relying on the same rationale for the search of the safe at the residence, we do not believe a separate warrant was required for the RV gun safe. See, *United States v. Ross*, 456 U.S. 798, 102 S. Ct. 2157, 72 L. Ed. 2d 572 (1982); *State v. Salas*, 237 Neb. 546, 466 N.W.2d 790 (1991). We have found no authority, nor has Garza directed us to any, which establishes greater protections for safes in RVs than safes in homes. The district court was not clearly wrong in denying the motion to suppress evidence found in the RV.

### 2. Jury Instruction

[15,16] Garza argues the district court erred by rejecting his proposed instruction on constructive possession related to the firearms. To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction. *State v. Parnell*, 294 Neb. 551, 883 N.W.2d 652 (2016). All the jury instructions must be read together, and if, taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and evidence, there is no prejudicial error necessitating reversal. *Id.*

[17] Utilizing NJI2d Crim. 4.2, the district court instructed the jury: "Possession of a thing means either knowingly having it on one's person, or knowing of its presence and having the right to exercise dominion and control over it." Garza argues the district court erred in omitting his additional language defining "constructive possession" as proof of ownership, dominion, or control over the contraband itself, coupled with the intent to exercise control over the same. Garza emphasizes that the given instruction does not emphasize adequately the required intent. We note, however, that the instructions included a separate instruction which does define "intent." Moreover, the elements instruction as to each of the firearms charges required the jury to find beyond a reasonable doubt that Garza possessed each firearm "knowingly and intentionally." Garza relies on *State v. Garza*, 256 Neb. 752, 592 N.W.2d 485 (1999), and *State v. Garcia*, 216 Neb. 769, 345 N.W.2d 826 (1984), for this additional language, but neither case says the additional language requested is required. If there is an applicable instruction in the Nebraska Jury Instructions, the court should usually give this instruction to the jury in a criminal case. *State v. Lavalleur*, 289 Neb. 102, 853 N.W.2d 203 (2014). See, also, *State v. Castellanos*, 26 Neb. App. 310,

918 N.W.2d 345 (2018) (affirming use of NJI2d Crim. 4.2 defining "possession"). We find that the district court did not err by failing to give Garza's proposed instruction.

[18] Garza also argues he was prejudiced when his lawyer's argument to the jury about reading the instructions together in order to find "intent to exercise dominion and control" was met with "incredulity" by the court and derision by the prosecutor. Brief for appellant at 52, 54. However, Garza does not assign this action by the court as error. To be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error. *Adair Holdings v. Johnson*, 304 Neb. 720, 936 N.W.2d 517 (2020). Therefore, we do not consider this argument.

## VI. CONCLUSION

We find no error in the district court's determinations that Garza's motions to suppress should be overruled. We also find no error in the district court's refusal to give Garza's proposed instruction regarding constructive possession. Accordingly, the judgment of the district court is affirmed.

Affirmed.